NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230096-U

NO. 4-23-0096

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 28, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* J.K., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
| Petitioner-Appellee, | ) | No. 20JA198 |
| v. | ) | |
| Emmanuel K., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | Erin Buhl, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Harris and Zenoff concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed the trial court's termination of respondent's parental rights, concluding its best interest determination was not against the manifest weight of the evidence.

¶ 2     In September 2022, the State filed a petition to terminate the parental rights of respondent, Emmanuel K., as to his minor child, J.K. (born in March 2017). In January 2023, the trial court granted the State's petition and terminated respondent's parental rights. Respondent appeals, arguing the court erred in finding it was in J.K.'s best interest to terminate respondent's parental rights. We affirm.

¶ 3                                I. BACKGROUND

¶ 4     On July 8, 2020, the State filed a two-count petition seeking to adjudicate J.K. neglected under the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.*

(West 2020)). The State alleged J.K.'s mother had a substance abuse issue which prevented her from properly parenting and both parents had a history of engaging in domestic violence. (J.K.'s mother died of a drug overdose in August 2020.) On October 30, 2020, respondent stipulated to count II of the neglect petition, and the trial court adjudicated J.K. neglected due to being in an environment injurious to his welfare (705 ILCS 405/2-3(1)(b) (West 2020)). The same day, in a separate dispositional order, the court adjudged respondent unfit or unable to care for J.K. for reasons other than financial circumstances alone, made J.K. a ward of the court, and placed his custody and guardianship with the Illinois Department of Children and Family Services.

¶ 5        On September 29, 2022, the State filed a petition to terminate respondent's parental rights. The State alleged respondent was unfit in that he (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to J.K.'s welfare (750 ILCS 50/1(D)(b) (West 2022)); (2) failed to protect J.K. from conditions within the environment injurious to his welfare (750 ILCS 50/1(D)(g) (West 2022)); (3) failed to make reasonable efforts during a nine-month period following adjudication of neglected or abused minor, specifically the period spanning December 27, 2021, to September 27, 2022 (750 ILCS 50/1(D)(m)(i) (West 2022)); and (4) failed to make reasonable progress toward the return of J.K. during any such nine-month period, specifically those periods spanning August 12, 2021, to May 12, 2022, and/or December 27, 2021, to September 27, 2022 (750 ILCS 50/1(D)(m)(ii) (West 2022)).

¶ 6        Following a November 23, 2022, hearing on the State's petition, the trial court found respondent unfit by clear and convincing evidence as to all four counts alleged.

¶ 7        During the best interest hearing, Cassidy Ferguson, respondent's caseworker, testified J.K. had been placed with his maternal grandmother for a little over two years. Ferguson observed the interactions between J.K. and his grandmother to be "nurturing" and "very loving."

J.K. would regularly call his grandmother "Meemaw" and express his desire to live with her "forever." By contrast, J.K. "really d[id] not talk about wanting to visit with [respondent]" and "there's no bond there." According to Ferguson, J.K.'s grandmother wanted to provide permanency for J.K. and to adopt him. Ferguson had "no concerns" regarding J.K.'s grandmother's ability to safely parent him, reported J.K. to be developmentally on track, happy, and healthy, and opined it was in J.K.'s best interest for respondent's parental rights to be terminated. Ferguson expressed concern over the potential for a "very disruptive" effect on J.K.'s life if he were removed from his grandmother's care.

¶ 8 On cross-examination, Ferguson explained she never observed any visits between respondent and J.K., but she had asked J.K. about his father. J.K. indicated he did not want to return home and instead wanted to "stay with Meemaw forever." However, J.K. also liked visits with respondent and the chance to play with other children at the park where the visits occurred.

¶ 9 Respondent testified, "I love my son. We have a good relationship. I mean, we play games. We talk. He's very smart. And, I mean, I can't explain it, really. I mean, we have a father-and-son relationship." Respondent had not seen J.K. since October 20, 2022, because his lack of transportation prevented him from travelling to Rockford, Illinois, for the visits. Respondent called J.K. approximately once a week and spoke with him for "15 to 20 minutes" about school, "what he's doing, what new toys he has, [and] what movies he's watching." Respondent gave J.K. magnets, coloring books, and dinosaur toys, as well as food at the visits. Respondent described his visits with J.K. in the park as going "well." While J.K. was initially more interested in playing with other children, he would return to respondent and play with him "after a little redirection." Over the State's objection, respondent testified he was willing to do any services required of him. Respondent opined terminating his parental rights would not be in J.K.'s best

interest due to the ability of a father to teach his child "right from wrong" and because he loved J.K. and "will do anything for him."

¶ 10　　　　On cross-examination, respondent stated he did not give J.K. gifts for Christmas because respondent "didn't think [he] would be able to get them to him." Respondent explained he didn't inform his caseworker about his transportation difficulties because he "thought she was well aware." When asked why he did not help J.K. with his homework, respondent responded, "I do not know." On redirect examination, respondent asserted his caseworker was aware of his transportation difficulties even though he did not specifically tell her they prevented him from travelling to Rockford for his visits with J.K.

¶ 11　　　　Lisa Smith, J.K.'s court-appointed special advocate, testified she visited J.K. and his grandmother every other week and observed "lots of friendly interaction and comfort in their relationship." According to Smith, J.K. and his grandmother were bonded and J.K. calls her "Meemaw." When Smith asked J.K. about how his visits with respondent had gone, J.K. would "normally be quiet," and, after further prompting, would "just be quiet and avoid answering the question or avoid *** eye contact" with Smith.

¶ 12　　　　On cross-examination, Smith explained she last spoke with respondent in March 2022 during a "difficult" in-person visit. After having "difficult conversations," respondent got upset and asked Smith to leave, and she did. Smith stated the conversation was "difficult" because it entailed asking respondent how he was planning to achieve his goals of moving out of his present home and regaining custody of J.K. without a regular job and without completing his services. Smith had not observed "any interaction" between J.K. and respondent.

¶ 13　　　　The trial court found it was in J.K.'s best interest to terminate respondent's parental rights and changed the permanency goal to adoption.

¶ 14    This appeal followed.

¶ 15                                II. ANALYSIS

¶ 16    We note respondent does not challenge the trial court's unfitness findings on appeal. Instead, respondent only argues the court's best interest finding was against the manifest weight of the evidence. Accordingly, we confine our analysis to that issue.

¶ 17    When a trial court finds a parent unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352, 818 N.E.2d 1214, 1220 (2004). "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364, 818 N.E.2d at 1227. The State must prove by a preponderance of the evidence that termination of parental rights is in the minor's best interest. *D.T.*, 212 Ill. 2d at 366, 818 N.E.2d at 1228. In making the best interest determination, the court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2022)). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re*

*Jay. H.*, 395 Ill. App. 3d 1063, 1071, 918 N.E.2d 284, 291 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

"The court's best interest determination [need not] contain an explicit reference to each of these factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19, 8 N.E.3d 1258. On review, "[w]e will not disturb a court's finding that termination is in the child[ ]'s best interest unless it was against the manifest weight of the evidence." *In re T.A.*, 359 Ill. App. 3d 953, 961, 835 N.E.2d 908, 914 (2005). "A finding is against the manifest weight of the evidence only if the evidence clearly calls for the opposite finding [citation], such that no reasonable person could arrive at the circuit court's finding on the basis of the evidence in the record [citation]." (Internal quotation marks omitted.) *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68, 162 N.E.3d 454.

¶ 18            Respondent contends the testimony and reports were insufficient to support the trial court's best interest determination. Respondent asserts the caseworker's reports were "highly critical" of him "in almost every paragraph" and "replete with negative comments," which he blames on a poor relationship with the caseworker. Respondent argues his testimony regarding his love for J.K., their weekly phone conversations, giving J.K. toys and food, and his willingness to complete services demonstrates the court's error. The State maintains the "strong bond" J.K. has developed with his grandmother, his desire to remain with her, and her willingness to adopt him shows the court's best interest determination was correct. The State contends removing J.K. from his grandmother would be detrimental to his stability. The State disagrees with respondent's characterization of the reports. The State argues the best interest determination pertains to the child, not the parent, and the court did not err in finding termination of respondent's parental rights to be in J.K.'s best interest. We agree with the State.

¶ 19    First, the reports in question are not "replete with negative comments" or "animosity," as respondent suggests. Rather, the November 23, 2022, report matter-of-factly describes respondent's lack of cooperation with the agency and his hostile communications with Ferguson. The January 4, 2023, report, captioned as an "addendum" to the November report, candidly mentions J.K.'s grandmother's arrest the previous month on an outstanding traffic warrant after a collision with a cement truck in McHenry County.

¶ 20    More importantly, the evidence presented does not clearly demonstrate the trial court should have reached the opposite result in making its best interest determination. During the best interest hearing, Ferguson testified regarding (1) the "nurturing" and "very loving" interactions between J.K. and his grandmother, (2) J.K. calling his grandmother "Meemaw" and expressing his desire to live with her "forever," (3) J.K. not talking about wanting to visit with respondent, and (4) the potential for a "very disruptive" effect on J.K.'s life if he was to be removed from his grandmother. Smith testified regarding similar considerations, including J.K.'s indifference or avoidance when asked to describe his visits with respondent.

¶ 21    Based on the evidence, the trial court found J.K. was in "a very loving" and "very stable" home, his academic needs were being satisfied, and he was "developing a sense of worth" and "a sense of his attachments" and "belongings to his family." The court acknowledged respondent's love for J.K., even referring to it as "one fact all parties can agree on." The court also proposed J.K. "loves his father" and, "on some level, does have a bond with his father." However, while a bond of love and affection between J.K. and respondent may exist, our supreme court has emphasized, "[f]ollowing a finding of unfitness *** the focus shifts to the child. The issue is no longer whether parental rights *can* be terminated; the issue is whether, in light of the child's needs, parental rights *should* be terminated." (Emphases in original.) *D.T.*, 212 Ill. 2d at 364, 818 N.E.2d

at 1227. The court emphasized respondent had not engaged in, or completed, his services, and had not been "in a safe, stable place *** emotionally [or] physically." The court also emphasized J.K.'s need for safety and stability, particularly in light of the circumstances that brought him into foster care. The court's best interest determination was not against the manifest weight of the evidence.

¶ 22                                III. CONCLUSION

¶ 23            For the reasons stated, we affirm the trial court's judgment.

¶ 24            Affirmed.